**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CANAVERAL PORT AUTHORITY,**

          **Plaintiff,**

**-vs-**                                    **Case No. 6:09-cv-1919-Orl-28DAB**

**M/V SURFSIDE PRINCESS, SURFSIDE**
**PRINCESS, LCC, and OCEANS CASINO**
**CRUISES, INC.,**

          **Defendants.**

_____

**AMENDED REPORT AND RECOMMENDATION[1]**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration with oral argument on the following motion filed herein:

> **MOTION:**    **ORCHARD DRIVE, LLC'S MOTION TO DISSOLVE REEL GAMES INC.'S ARREST OF VESSEL AND FOR OTHER RELIEF FOR FAILURE TO COMPLY WITH THIS COURT'S JUNE 18, 2010 ORDER (Doc. No. 167)**
>
> **FILED:**    **August 3, 2010**
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

Orchard Drive, LLC, as Trustee and Administrative Agent for the Lender Group, moves to have the pleadings stricken and the arrest warrant of Reel Games, Inc. dissolved for Reel Games' failure to pay its portion of the custodial expenses incurred since the M/V Surfside Princess (the "Vessel") was arrested. Reel Games filed its Memorandum in Opposition on August 17, 2010. Doc. 181.

---

[1] The Report and Recommendation was amended solely to correct a typographical error describing the party who filed the Motion.

**Pertinent procedural history**

The first Complaint was filed against the Vessel (and other operating entities) on November 9, 2009. Doc. 1. Reel Games moved to intervene in this action on December 17, 2009 (Doc. 11) and its first motion for issuance of an arrest warrant on the Vessel was granted on December 18, 2009 (Doc. 14). The Court subsequently granted a second motion for arrest warrant (following the filing of its Amended Verified Complaint) on December 21, 2009 (Doc. 18); neither warrant was ever executed although authorized by the Court[2]. After several other parties intervened as Plaintiffs, the substitute custodian was appointed on March 25, 2010. Doc. 61. The Vessel was arrested on March 26, 2010 by Orchard Drive[3]. Doc. 63. On May 27, 2010, the Court ordered all arrest warrants to be executed on the Vessel no later than June 11, 2010, and Reel Games' arrest warrant was executed on June 7, 2010. Doc. 120.

On June 18, 2010, the Court ordered Reel Games to pay its portion of the custodial expenses (44.5%) based on each Plaintiffs' claim relative to the estimated value of the Vessel and the percentages relative to the group of claims as a whole[4]; the parties were directed to confer to reach agreement on the logistics of payment of the proportional shares and make the payment to Orchard Drive. Doc. 138. Reel Games did not. Instead, more than six weeks later, Reel Games filed a Motion for Reconsideration of apportionment of custodial expenses on July 30, 2010. Doc. 165.

On August 3, 2010, Orchard Drive filed its Motion to Dissolve Reel Games' lien for failure to pay its portion of the custodial expenses. Doc. 167. Following the hearing on August 26, 2010,

---

[2] Reel Games states that its reason for deferring having the Vessel arrested was it was attempting to secure the release of the slot machines on board. Doc. 165.

[3] The original Plaintiff Canaveral Port Authority did not arrange to have the warrant executed by the Marshal, although the motion seeking the warrant was granted on November 10, 2009. Doc. 3.

[4] Apportionment of the costs was based upon the percentage of the parties' respective claims in the parties' Joint Statement of Positions (Doc. 133), dated June 15, 2010, against the estimated value of the Vessel. Doc. 138.

the Court denied Reel Games' Motion for Reconsideration and ordered Reel Games to pay the original allocation set forth in the Court's June 18, 2010 Order (Doc. 138) by September 1, 2010, "failing which Reel Games' arrest warrant will be dissolved with the attendant consequences." Doc. 197. Reel Games was required to pay its share based on its original claims by September 1, 2010 and to file a Notice of Payment; alternatively, Orchard Drive was ordered to file a Notice of Non-payment. Doc. 197. On September 1, 2010, Reel Games filed its Notice of Inability to Comply with the Court's Order (Doc. 201) and Orchard Drive filed its Notice of Non-payment of Custodial Fees from Reel Games (Doc. 202).

**Analysis**

    A. *All claimants are to bear a portion of the custodial expenses*

There is no dispute that Reel Games, as an intervening plaintiff and arresting party, is responsible for a share of the expenses due to the substitute custodian under very clear Eleventh Circuit precedent. *Donald D. Forsht Associates, Inc. v. Transamerica ICS, Inc*. 821 F.2d 1556, 1561-62 (11th Cir. 1987). In *Forsht*, the Eleventh Circuit rejected a later arresting party's argument that the first party arresting the vessel was responsible for the entire cost of the custodial expenses:

> By arranging for a substitute custodian for the vessels, [the first party to arrest the vessels] performed two valuable services. First, it safeguarded the vessels, thereby protecting the value of the property, and two, it provided for such safekeeping at a cost lower than that charged by the United States Marshal's office. Clearly these two services benefitted all claimants interested in the vessels by maximizing the potential proceeds recoverable from the sale of the vessels. We find it inconceivable that by being the first party to arrest the vessels, and thereby being the party to arrange for a substitute custodian, [the first party to arrest] should become wholly liable for the administrative expense of maintaining the vessels. Greyhound has not cited, nor have we found, any support for such a proposition. In fact the relevant law, meager though it is, clearly supports the idea that all claimants share in the administrative expenses. . . In a situation in which the proceeds from the sale of a vessel are adequate to cover administrative expenses and the other claims, *all* claimants 'pay' the administrative expenses because payment of those expenses diminishes the fund from which the claimants receive their pro rata distribution.

*Id.*, 821 F.2d at 1561-62 (emphasis in original); *see Lubricantes Venoco, Intern., C.A. v. M/V NEVERIS,* 60 Fed.Appx. 835, 842 (1st Cir. 2003) ("It is a well-established tenet of admiralty law that the arresting plaintiff and the intervening plaintiffs share in the costs of maintaining the res until resolution of the case.").

In the Middle District, Judge Jenkins has apportioned custodial expenses as suggested in *Forsht*: "As private litigants and the parties seeking to arrest the vessel, Plaintiffs are obligated to pay the necessary fees related to arresting and safekeeping of the arrested vessel, including past and future custodian and dockage fees and the cost of insuring the vessel." *See Petrano v. Vessel Mistress*, 2006 WL 4701844 (M.D. Fla 2006) (citing 28 U.S.C. § 1921; *Donald D. Forsht Associates, Inc. v. Transamerica ICS, Inc*., 821 F.2d 1556, 1561 (11th Cir.1987)) and *Araya v. McLelland*, 525 F.2d 1194, 1195 (5th Cir.1976))*; see also Hvide Marine Inc. v. M/V Pacific Mako,* 1998 WL 1108952, 1 (S.D.Ga. 1998) (apportioning custodial expenses among all claimants); *see also Certain Underwriters at Lloyds v. Kenco Marine Terminal, Inc*., 81 F.3d 871, 873 (9th Cir. 1996) (affirming district court's discretion to order apportionment of custodial costs equally among all intervening plaintiffs).

B.  *The apportionment methodology is within the Court's discretion*

On June 18, 2010, following oral argument on the issue, the Court apportioned the custodial expenses based on each claimant's proportional claim, based on each Plaintiffs' claim relative to the estimated value of the Vessel (and capped at 100% of the estimated fair market value of the Vessel) and the percentages relative to the group of claims as a whole as stated in the parties' Joint Statement of Positions.  Doc. 133.  Reel Games was assigned 44.5% of the custodial costs.  Doc. 138.

Under Local Admiralty Rule 7.05(k)(5), the Court can apportion custodial costs among the original plaintiff and all intervening plaintiffs:

> **Contribution by Intervening Parties to Expenses of Substitute Custodians**: When a substitute custodian has been authorized under Local Admiralty Rule 7.05(k)(3), the Court in its discretion *may* require contribution by intervening parties (1) to all expenses of the substitute custodian. . . . In addition to all relevant facts, the court *may* consider the provisions of Local Admiralty Rule 7.05(f)(2)(B).

Middle District of Florida Local Admiralty Rule 7.05(k)(5)(emphasis added). A portion of subpart (f)(2)(B) states that the expenses should be calculated from the full time of the arrest, and not prorated from the date a particular party's intervening complaint was filed. Middle District of Florida Local Admiralty Rule 7.05(f)(2)(B).

Reel Games argued at two hearings and in several motions that the Court should have applied the methodology set forth in Local Admiralty Rule 7.05(f)(2), which the Marshal is to use at the initial arrest. The Rule advises that counsel for the last intervening plaintiff shall deliver to the Marshal a list which determines the total amounts claimed by each party, the proportion which each party's claim bears to the aggregate claims asserted in the litigation, as a percentage, and based on those percentages, the Marshal is to assess those amounts as the percentage due to the Marshal for the custodial costs. Local Admiralty Rule 7.05(f)(2) & (3). In this case, a substitute custodian was appointed on February 16, 2010. Doc. 6. Therefore, Local Admiralty Rule 7.05(k)(5) is the applicable rule and it states the Court "*may* require contribution by intervening parties," and "[i]n addition to all relevant facts, the court *may* consider the provisions of Local Admiralty Rule 7.05(f)(2)(B)." The Court is not required to use the methodology set forth in Rule 7.05(f)(2), especially in consideration of "all relevant facts." The Court chose not to apply the methodology that the Marshal (without discretion) is required to use.

Moreover, although Reel Games clearly did not agree with this Court's apportioning of the custodial expenses (*see, e.,g.,* Doc. 165), at no time did Reel Games appeal the decision to presiding District Judge Antoon. *See* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any

pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

C. *The consequence of failing to pay the custodial expenses is dissolution of the warrant*

Orchard Drive moves to dissolve Reel Games' arrest of the Vessel for its failure to pay its portion of the custodial costs and to dismiss the remaining claims of Reel Games' Intervening Complaint, as well as striking its July 9, 2010 Statement of Interest. Doc. 152.

In *Petrano v. Vessel Mistress*, Magistrate Judge Jenkins recommended the arrest of a vessel be vacated as the appropriate sanction for the intervening plaintiff's failure to pay custodial costs to the substitute custodian in charge of the vessel; District Judge Whittemore adopted the recommendation as his final order. 2006 WL 4701844 (M.D. Fla. 2006). Judge Whittemore reasoned that the plaintiffs were responsible for the custodial costs once they arrested the vessel and failure to pay their fees subjected their arrest warrant to dismissal:

> Plaintiffs are responsible for paying the necessary fees incident to the arrest and safeguarding of the vessel. 28 U.S.C. § 1921; *Donald D. Forsht Assocs., Inc. v. Transamerica ICS, Inc*., 821 F.2d 1556, 1561 (11th Cir.1987). Notwithstanding their claim of indigence, 29 U.S.C. § 1915 does not relieve them of their financial responsibilities in this maritime action. They have been afforded a reasonable time within which to pay dockage, towing and substitute custodian fees. They have been placed on notice by court order that their failure to pay would result in the arrest of the Mistress being vacated (Dkts. 177 and 254). Their reliance on *Washington-Southern Nav. Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629, 44 S.Ct. 220, 68 L.Ed. 480 (1924) is misplaced.

*Id*. at *2.

Faced with a similar situation in *Beauregard, Inc. v. Sword Services, LLC*, the Fifth Circuit affirmed the district court's exercise of power to condition a plaintiff's intervention in an admiralty action based upon a sharing of the custodial costs. 107 F.3d 351, 352. In *Beauregard,* the holder of the first preferred ship mortgage arrested the vessel in an *in rem* proceeding, and two other entities

subsequently intervened in the seizure and also arrested the vessel to assert their maritime liens. *Id*. Each of the three parties which seized the vessel was ordered to pay a third of the *custodia legis* expenses. Sword Services was subsequently allowed to intervene in the seizure but declined to pay a share of the *custodia legis* expenses. *Id*. at 309. The mortgage-holder moved the court to dismiss the intervention of Sword Services, but the district court instead ordered Sword Services to seize the vessel and share the expenses of its custody in order to assert its lien. When Sword Services failed to comply with the order, the district court dismissed its intervention, and Sword Services appealed to the Fifth Circuit.

The Fifth Circuit first discussed a Supreme Court case, *New York Dock Co. v. The Poznan*, for the proposition that "the district court enjoys broad equitable authority over the administration of maritime seizures," including the power to compensate those who provide services while the vessel is in *custodia legis*:

> "The most elementary notion of justice would seem to require that services or property furnished upon the authority of the court . . . for the common benefit of those interested in a fund administered by the court, should be paid from the fund as an 'expense of justice.'" The Court further explained that "[t]he court of admiralty is asked, in the exercise of its admiralty jurisdiction, to administer the fund within its custody in accordance with equitable principles as [is] its wont."

*Beauregard*, 107 F.3d at 354 (quoting *New York Dock Co. v. The Poznan*, 274 U.S. 117, 121-22 (1927)). From this principle – that the court is responsible for managing the finite fund of the vessel's liquidated value – in order to equitably make the fund available to pay claimants, the Fifth Circuit concluded that "in its inherent powers to manage this litigation properly, the district court had the discretion to order a party to seize the vessel and divide the cost of the ship's maintenance among all the parties." *Id.* Additionally, the Fifth Circuit determined that, even if the district court's order had been erroneous, "the district court was within its authority to dismiss Sword [Services] as a sanction

for its willful disregard of the order." *Id*. Similarly, in *Lubricantes Venoco, Intern., C.A. v. M/V NEVERIS,*, the First Circuit affirmed the district court's authority to charge a portion of the *excess* of the custodian costs (by the Marshal and ship salvager) – which exceeded the proceeds from the sale of the vessel – against the intervening plaintiffs after the interlocutory sale of the vessel. 60 Fed.Appx. 835, 842 (1st Cir. 2003).

In this case, Reel Games has failed on numerous occasions to pay its portion of the custodial costs. The Vessel was arrested on March 26, 2010. Doc. 63. Reel Games first filed its Intervening Complaint on December 17, 2009 (Doc. 11) but did not have its arrest warrant finally served on the Vessel until June 7, 2010. *See* Doc. 120. The Court allowed Reel Games, after a belated (by six weeks) motion for reconsideration, until September 1, 2010 to pay its portion of the custodial costs or be subject to having the arrest warrant vacated and its operative Intervening Complaint dismissed. Reel Games has failed to comply with the Court's repeated orders to pay its portion of the custodial costs. In general, "a valid seizure of the res is a prerequisite to the initiation of an *in rem*" action. *Betty K Agencies, Ltd. V. M/V Monada*, 432 F.3d 1333, 1341 (11th Cir. 2005) (citing *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 84 (1992)). Where there is no proper arrest of the vessel as required by Admiralty and Maritime Supplemental Rule E, this Court sitting in admiralty does not have jurisdiction over Reel Games' *in rem* claims against the Vessel. *See, e.g,, Burns Bros. V. Long Island R. Co.,* 176 F.2d 950 (2d Cir. 1949) (valid arrest of vessel is required by admiralty rules and without it the court lacks jurisdiction to enter decree *in rem*).

Accordingly, it is respectfully **RECOMMENDED** that Reel Games' Arrest Warrant as served on June 7, 2010 be **VACATED** and Reel Games' Intervening Complaint to the extent it asserts *in rem* claims against the Vessel be **DISMISSED** for willful and repeated failure to comply with the Court's Orders regarding payment of Reel Games' portion of the custodial costs.

-8-

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on September 23, 2010.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Any Unrepresented Party
Courtroom Deputy